**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-po-002 |
| | ) | |
| ConocoPhillips Company, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-po-003 |
| | ) | |
| Fidelity Exploration and Production Company, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-po-004 |
| | ) | |
| Continental Resources, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-po-005 |
| | ) | |
| Brigham Oil and Gas, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

| | |
|---|---|
| United States of America, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:11-po-006 |
| | ) |
| Petro Hunt, LLC, | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| United States of America, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:11-po-008 |
| | ) |
| Slawson Exploration Company, Inc., | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING REQUESTS FOR SUMMONS**

The above cases are before the court upon a request by the United States for issuance of court summons for the named defendants. In each of the cases, the United States has filed an Information charging misdemeanor violations of the Migratory Bird Treaty Act ("MBTA") along with a supporting affidavit. Since the United States is proceeding by way of Information and court summons, the court is required to make a determination of probable cause before it can order that a summons can be issued. Fed. R. Crim. P. 9(a) & 58(d)(3).

The court's obligation in reviewing what has been filed is to determine in each of the cases whether there is probable cause to believe "that an offense has been committed and that the defendant committed it." Fed. R. Crim. P. 9(a) & 58(d)(3); see, e.g., Giordenello v. United States, 357 U.S. 480, 485 (1958). The showing that need be made is only one of probability, not a *prima*

*facie* case.  See, e.g., Illinois v. Gates, 462 U.S. 213, 235-236 (1983); United States v. Ventresca, 380 U.S. 102, 107-108 (1965).  Further, in making its evaluation, the court is required to consider the information presented in a commonsense, and not a hypertechnical, manner and draw all reasonable inferences.  Id.  That being said, something more than suspicion is required.  See id; cf. Terry v. Ohio, 392 U.S. 1 (1968) (articulating the lower standard that permits a "stop-and-frisk").  The court must judge for itself "the persuasiveness of the facts relied upon by the complaining officer" and "not accept without question the complaint's mere conclusion that the person . . . has committed a crime."  Giordenello v. United States, 357 U.S. at 485-486.

In each of the above cases, the Information charges a "taking" of one or more migratory birds under § 703(a) of the MBTA by an entity engaged in the oil and gas business.  Each of the cases is supported by a separate affidavit in which the affiant states that dead migratory birds were found in one or more reserve pits on oil production sites controlled by the defendant.  In most of the cases, the number of birds alleged to have been found are one or two per pit, and three of the cases involve only a single pit and charge the taking of a single bird.  Other than detailed information demonstrating who controls the oil production sites, little other information is provided. In particular, the court notes:

- The affidavits are devoid of any information describing what a reserve pit is and, more significantly, what the reserve pit is believed to contain.

- The affidavits are silent as to the purported connection between the reserve pits and the dead waterfowl other than that one or two birds have been found dead in each of the reserve pits.  For example, it may be that reserve pits contained an oily substance that coated the birds and likely caused their death.  If so, there is no mention of "oily

3

substance" being in the reserve pits or even on the dead birds, except in one instance for a bird found near a reserve pit. Or perhaps, the reserve pits are believed to have contained toxic chemicals that the birds ingested causing their deaths. If that is the case, there is no mention of that either. Still another possibility is that the reserve pits contain a watery substance that attracts the birds and the problem is lurking predators who killed the unprotected birds. Under the government's apparent strict liability theory, this also could subject a defendant to criminal liability.

- In all of the cases but one, the affidavits state the reserve pits were "unnetted" but do not state what the significance of this is, if any.[1] In other words, the court is left to speculate about such matters as: what the netting is, its intended function, and, more significantly, why the lack of netting had anything to do with the dead waterfowl mentioned in affidavit.

The court is aware that, in most, if not all cases the taking of birds protected by the MBTA is a strict liability offense. Consequently, not much is required to show probable cause. But, even under the most liberal view of what is required to support a strict liability charge under the MBTA, causation is still an element and probably also foreseeability. E.g., United States v. Apollo Energies, 611 F.3d 679, 687-688 (10th Cir. 2010) ("Apollo Energies"); cf. Babbit v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 696 n.9 (1995); id. at 709-714 (O'Conner, J. concurrng). And here, the court believes more is required to "connect the dots."

---

[1] There appears to be no mention in the affidavit in Case No. 4:11-po-002 that the reserve pits were unnetted.

4

But, lest the government be concerned, the court is not suggesting there needs to be a chemical analysis of the contents of the reserve pits or an autopsy of the dead birds to demonstrate probable cause.[2] At this point, information based upon experience or observation would probably suffice.

There is also another more fundamental problem in terms of probable cause that the court recognizes, but believes it prudent to defer. The information that has been submitted in these cases makes no allegation that reserve pits are themselves unlawful, that the reserve pits contained material that is prohibited by law, or that there is a statute or regulation in place that requires the defendants to net the reserve pits. Consequently, in evaluating whether or not what is being alleged constitutes a crime under the MBTA, the court must presume that the defendants have otherwise acted lawfully in carrying out their commercial enterprises, which unlike hunting or poaching, is not directed specifically to interaction with the protected birds. And, in this instance, the courts are not in agreement as to whether migratory bird kills resulting from lawful commercial activity that is unrelated to hunting or poaching constitutes a crime under the MBTA. Compare, e.g., United States v. Chevron, No. 09-CR-0132, 2009 WL 3645170 (W.D. La. Oct. 30, 2009) (rejecting plea agreement with respect to the death of 35 Brown Pelicans entrapped in an uncovered oil well caisson because the activity did not constitute a crime under the MBTA) with United States v. Moon Lake Electric Ass'n, Inc., 45 F. Supp. 2d 1070, 1079-83 (D. Colo. 1999) (death of migratory birds caused by power lines within the scope of the MBTA); see generally United States v. WCI Steel, Inc., No.

---

[2] Whether that kind of information would be required to prove guilt beyond a reasonable doubt, particularly for the death of one or two birds and no obvious physical evidence of the cause of death, would be for a later determination. See United States v. WCI Steel, Inc., infra, 2006 WL 2334719, *5 (concluding that the evidence did not establish beyond a reasonable doubt that the defendant caused the deaths of 28 migratory birds because of the possibility of other causes).

5:04 MJ 5053, 2006 WL 2334719, *4 (N.D. Ohio Aug. 10, 2006) (discussing the spectrum of differing cases).

One of the more recent cases to address the issue is the Tenth Circuit's case in United States v. Apollo Energies, 611 F.3d 679 (10th Cir. 2010) ("Apollo Energies"). In that case, two oil well drillers were separately convicted of "taking" deaths of migratory birds. In each of the cases, the facts were that migratory birds were attempting to nest in the defendants' cylindrical "heater-treaters" and were dying because of the difficulty of escape. Sometime earlier, the Fish and Wildlife Service had become aware this was occurring in the industry and had embarked on an educational campaign to alert the industry and suggest protective measures. The two defendants appealed their convictions, arguing that they could not be criminally prosecuted under the MBTA. The Tenth Circuit rejected that argument. However, the Tenth Circuit did reverse one of the convictions for one of the defendants based upon that defendant's lack of notice of the "heater-treater" entrapment problem. The court's dismissal was based upon what it characterized as being the interrelated problem of lack of proximate cause and lack of "fair notice" under the Due Process Clause as to what was deemed criminal under the MBTA, given its expansive scope.[3] The defendant had claimed lack of awareness of the problem and the government was unable to prove otherwise, including acknowledging that a notice sent to other companies had not been sent to the defendant.

In terms of this case, the court is governed by what the Eighth Circuit has had to say regarding the scope of the MBTA. The only Eighth Circuit case that the undersigned has found, which still appears to be good law, is its decision in Newton County Wildlife Ass'n v. U.S. Forest

---

[3] No opinion is expressed here regarding whether the notice that Tenth Circuit believed in Apollo Energies was necessary would be required in any of these case if the court was to ultimately conclude that the MBTA applies in the first instance.

Service, 113 F.3d 110 (8th Cir.1997), *rehearing and suggestion for rehearing en banc denied* (Aug 06, 1997), *cert. denied,* Newton County Wildlife Ass'n v. Rogers, 522 U.S. 1108 (U.S. Feb. 23, 1998) ("Newton County Wildlife").

In that case, several environmental-minded plaintiffs filed a civil action seeking, among other things, to preliminarily enjoin sales of timber by the National Forest Service in the Ozark National Forest. One of the grounds alleged for the preliminary injunction was that the sales would result in logging activity that the Forest Service acknowledged would "disrupt nesting migratory birds, killing some." The plaintiffs contended this would "violate the MBTA's absolute prohibition against killing or taking nesting birds" unless the Forest Service obtained a permit from the Fish and Wildlife Service allowing the activity. The Eighth Circuit rejected this argument stating in relevant part:

> Initially, we note that MBTA's plain language prohibits conduct directed at migratory birds-"pursue, hunt, take, capture, kill, possess," and so forth. The government argues that the statute imposes "strict liability" on violators, except for felony violations, which under a recent amendment must be done "knowingly." Strict liability may be appropriate when dealing with hunters and poachers. But it would stretch this 1918 statute far beyond the bounds of reason to construe it as an absolute criminal prohibition on conduct, such as timber harvesting, that *indirectly* results in the death of migratory birds. Thus, we agree with the Ninth Circuit that the ambiguous terms "take" and "kill" in 16 U.S.C. § 703 mean "physical conduct of the sort engaged in by hunters and poachers, conduct which was undoubtedly a concern at the time of the statute's enactment in 1918." Seattle Audubon Soc'y v. Evans, 952 F.2d 297, 302 (9th Cir.1991); accord Mahler v. United States Forest Serv., 927 F.Supp. 1559, 1573-74 (S.D.Ind.1996); Citizens Interested in Bull Run, Inc. v. Edrington, 781 F.Supp. 1502, 1509-10 (D.Or.1991).

113 F.3d at 115.

Obviously, Newton County Wildlife casts substantial doubt on whether what is being claimed in the cases now before the court is a crime under the MBTA in the Eighth Circuit. But, rather than address that issue now, the court will defer it for two reasons. First, there may yet be

7

some question regarding the extent of the Eighth Circuit's ruling. While Newton County Wildlife has been construed as prohibiting criminal prosecution under the MBTA for the kind of conduct charged here, e.g., United States v. WCI Steel, Inc., 2006 WL 2334719, *3, the Tenth Circuit in Apollo Energies suggested that Newton County Wildlife and other similar logging cases should be distinguished on the grounds that the logging activity affected only habitat and did not more directly result in bird deaths, Apollo Energies, 611 F.3d at 686 (although this appears to ignore the reference in Newton County Wildlife that some birds would be killed). Also, it may not be absolutely clear from the Eighth Circuit's discussion whether lawful commercial activity that is unrelated to hunting or poaching is beyond the reach of the MBTA completely or only that strict liability cannot be imposed, *i.e.*, leaving open the possibility of criminal prosecution if an appropriate *scienter* requirement is read into the Act for prosecutions involving commercial activity that is otherwise lawful and not directly involving migratory birds.

Second, and more practically, by deferring consideration of the issue, the court will be able to obtain the views of both the government and the defendants as to these and other possible distinctions and be able to consider them in the context of a more complete record. Of course, this assumes that the government cures the other deficiencies and the court orders the summons be issued.

Based on the foregoing, the court **DENIES** the requests for summons in the above-captioned cases based on insufficient showings of probable cause. The government can renew its requests upon providing supplemental information in each of the cases.

**IT IS SO ORDERED.**

Dated this 10th day of August, 2011.

                                                     <u>*/s/ Charles S. Miller, Jr.*</u>
                                                     Charles S. Miller, Jr.
                                                     United States Magistrate Judge