IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 4:11-po-005 |
| v. | ) AFFIDAVIT FOR ISSUANCE OF |
| | ) ARREST WARRANT OR SUMMONS |
| BRIGHAM OIL AND GAS, L.P., | ) |
| Defendant. | ) |

## STATEMENT OF PROBABLE CAUSE

I, **Richard A. Grosz**, Special Agent for the United States Fish and Wildlife Service declare as follows:

The Affiant is a Special Agent with the United States Fish and Wildlife Service (Service), Office of Law Enforcement, which is housed within the Department of the Interior. The Affiant has been a Special Agent, assigned to the Bismarck, North Dakota field office for approximately 13 years but has been employed as a Special Agent for approximately fifteen years. Prior to that, the Affiant was a Service Refuge Operation Specialist/ Refuge Officer for approximately four years. The Affiant holds a Master's Degree in Science from Humboldt State University with an emphasis in natural resources and a Bachelor of Arts Degree with a dual major in criminal justice and biology from Metropolitan State College. The Affiant has been trained in and has conducted numerous criminal investigations regarding violations of the Migratory Bird Treaty Act, (16 United States Code 701 *et. seq.*), which involved the take of migratory birds by the oil and gas industry. Additionally, the Affiant has inspected in excess of one thousand of oil and gas production sites within California, Colorado, Nebraska, Kansas, and North Dakota as a Special Agent and Refuge Officer.

The information contained in this Probable Cause Statement (Statement) is personally known to the Affiant based upon physical inspection by the Affiant of a specific site(s), from conversations with other Service Agents, employees, and/or Refuge Officers, employees of the North Dakota Game and Fish Department and/or Department of Health, employees of oil and gas companies, and through review of published literature as set forth in this Statement.

### Background Information

### North Dakota Industrial Commission Regulation and Reserve Pits

It is the Affiant's knowledge that the North Dakota Industrial Commission (NDIC) Oil and Gas Division regulates and permits all facets of oil and gas development within the State of North Dakota through regulations listed within the North Dakota Century Code (NDCC).

Specifically, NDCC 38-08-02(15), defines the term "Reserve pit" to mean an excavated area used to contain drill cuttings accumulated during oil and gas drilling operations and mud-laden oil and gas drilling fluids used to confine oil, gas, or water to its native strata during the drilling of an oil and gas well.

Further, NDCC 43-02-03-19, states in pertinent part, "A reserve pit may be utilized to contain solids and fluids used and generated during well drilling and completion operations, providing the pit can be constructed, used and reclaimed in a manner that will prevent pollution of the land surface and freshwaters . . . Under no circumstances shall reserve pits be used for disposal, dumping, or storage of fluids, wastes, and debris other than drill cuttings and fluids used or recovered while drilling and completing the well."

Further, NDCC 43-02-03-19, states in pertinent part, "Within a reasonable time, but not more than one year, after the completion of a well, the reserve pit shall be reclaimed."

Lastly, NDCC 43-02-03-19.1, states in pertinent part, "All pits and ponds which contain oil must be fenced, screened, and netted. This is not to be construed as requiring the fencing, screening, or netting of a reserve pit or other earthen pit used solely for drilling, completing, recompleting, or plugging unless such pit is not reclaimed in excess of ninety days after completion of the operation."

## Chemicals Generally Found Within Reserve Pits

It is the Affiant's knowledge based upon review of Service literature found on the Service's website that the contents of a reserve pit depends on the type of drilling mud used, the formation drilled, and other chemicals added to the well bore during the drilling process. Drilling fluids in reserve pits contain barium sulfate or barite, bentonite clay, lignosulfates, and lignites. Drilling fluids in reserve pits can also contain diesel, mineral oil, glycols, chromium, zinc, polypropylene glycol, and acrylamide copolymers. Fluids used in the hydraulic fracturing of a well are sometimes stored in reserve pits. Hydraulic fluids contain surfactants and other chemicals used to stimulate oil or natural gas flow. (Source: Service "Reserve Pits – Mortality Risks to Birds" September 2009, URL: http://www.fws.gov/mountain-prairie/contaminants/documents/ReservePitsBirdMortality.pdf) Other additives typically used in drilling fluids include: polymers (partially hydrolyzed polyacrylamide (PHPA) and polyanionic cellulose (PAC)); drilling detergents; and

2

sodium carbonate (soda ash). (Papp, J. 2001. Water-based drilling fluids. National Driller. URL http://www.nationaldriller.com/Articles/Cover_Story/14287fb054197010VgnVCM100000f932a8c0)
As reserve pit fluids evaporate, water soluble metals, salts, and other chemicals become concentrated. (Source: Service "Reserve Pit Management: Risks to Migratory Birds" September 2009, URL http://www.fws.gov/mountain-prairie/contaminants/documents/ReservePits.pdf)

### Migratory Bird Interaction with Reserve Pits

It is the Affiant's knowledge based upon review of Service literature found on the Service's website that an estimated 500,000 to 1 million birds are lost annually throughout the United States in oil field production skim pits and COWDFs. (Source: Service "Migratory Bird Mortality in Oilfield Wasterwater Disposal Facilities" May 2009, URL: http://www.fws.gov/mountain-prairie/contaminants/documents/COWDFBirdMortality_000.pdf)

It is the Affiant's knowledge based upon review of Service literature found on the Service's website that birds have many ways to become exposed to oil and other harmful liquids found on oil and gas production sites. Specifically, these exposure methods include but are not limited to:

    a.    Reserve pits containing oil or oil-based products (i.e. oil-based drilling fluids) can entrap and kill migratory birds and other wildlife. Birds, including hawks, owls, waterfowl, and songbirds, are attracted to reserve pits by mistaking them for bodies of water.

    b.    Wildlife can fall into oil-covered reserve pits while attempting to drink along the pits' steep sideslopes. The steep, synthetically-lined pits walls make it almost impossible for entrapped wildlife to escape.

    c.    Insects entrapped in the oil can also attract songbirds.

    d.    The sticky nature of oil entraps birds in the reserve pits and they die from exposure and exhaustion. Birds that do manage to escape die from starvation, exposure or the toxic effects of oil ingested during preening.

    e.    If they absorb or ingest oil in less than acutely lethal amounts they may suffer a variety of systematic effects and may become more susceptible to disease and predation. The presence of small amounts of hydrocarbons, such as diesel, and condensate, can create sheens on the reserve pit fluid. The presence of visible sheens on reserve pits is just as deadly to birds that come into contact with them.

    f.    Well stimulation chemicals, such as corrosion inhibitors and surfactants, disposed into reserve pits, pose additional risk to migratory birds. Surfactants reduce the surface tension of water; thus, allowing water to penetrate through feathers and onto skin. Furthermore, loss of water repellency in feathers due to reductions in surface tension will cause the bird to become water logged. Loss of buoyancy will cause the bird to drown, and,

    g.    Hydraulic fracturing fluids can contain chemicals that may be harmful to birds (e.g., surfactants, hydrochloric acid, caustic potash, and diesel fluid.

(Source: Service "Reserve Pit Management: Risks to Migratory Birds" September 2009, URL http://www.fws.gov/mountain-prairie/contaminants/documents/ReservePits.pdf )

### Service's Prior History with the Oil and Gas Industry

It is the Affiant's knowledge the Service has encouraged the oil and gas industry for more than a decade to net reserve pits and any other area where migratory birds may become exposed to oil and gas production liquids and chemicals. Based upon review of Service literature found on the Service's website, "A fail-safe solution is to remove pits or keep oil from entering the pits. Netting appears to be the most effective method of keeping birds from entering waste pits. Further, flagging is an inefficient deterrent for preventing wildlife mortality in oil pits. (Source: Service "Wildlife Mortality Risk in Oil Field Waste Pits" December 2000, URL: http://www.fws.gov/mountain-prairie/contaminants/papers/pitrisk.pdf)

In support of the Service's claim, in North Dakota alone, the Affiant has recovered in excess of 40 different species of oiled migratory birds from 35 different oil and gas companies, who had flagged or left their reserve pits open at the time of the Affiant's inspection. To the counter, the Affiant has never observed or recovered a migratory bird from a properly netted reserve pit in his career.

In 2008, the Affiant spoke before the North Dakota Petroleum Council, provided a Powerpoint Presentation, and informed the North Dakota oil and gas industry that the Service strongly encouraged the use of nets when companies used reserve pits. Additionally, the Affiant informed the oil and gas industry that exposed oil or other fluids which are commonly used or produced in the drilling and/or extraction of oil should be cleaned up or netted, and if left exposed, would more than likely cause take if migratory birds became attracted to the site.

### Service's Prior History with Brigham Oil and Gas, L.P.

It is the Affiant's knowledge that on May 28, 2008, the Affiant observed and collected one dead and oiled blue-winged teal from a reserve pit (e.g. Johnson #33 1-H site) in Mountrail County, North Dakota. The Johnson #33 1-H site was owned and operated by Brigham Oil and Gas, L.P. Further as part of the investigation, the Affiant verbally notified and subsequently sent a letter and Violation Notice, certified, return receipt requested to Brigham Oil and Gas, L.P. The Violation Notice was issued in the amount of $375.00 and within the letter, it stated in pertinent part:

> "For future operational issues involving Brigham Oil and Gas, the unauthorized take of migratory birds at your oil production facilities in North Dakota could be prevented with a minimum of expense and effort. Solutions to preventing wildlife mortality in these areas are fairly simple, straight forward and have been

implemented by oil operators statewide and nationwide. The Service suggests the following measures were applicable to your specific situation.

- **Keep Oil Off Open Pits or Ponds**. Immediate clean up of oil in open pits is critical to prevent wildlife mortalities.

- **Use Effective and Proven Exclusionary Devices**. Netting appears to be the most effective method of keeping birds from entering open pits. Flagging, reflectors, and strobe lights do not work. Published scientific studies as well as field inspections by Service personnel have documented bird mortalities at oil pits with flagging, reflectors, and strobe lights. The effectiveness of netting pits to exclude birds and other wildlife depends on its installation. Effective installation requires a design allowing for snow-loading and one that also prevents ground entry by small mammals and birds. A maximum mesh size of 1.5 inches will allow for snow-loading and will exclude most birds. Due to problems associated with snow accumulation on nets, and lower bird populations, netting may not be necessary during the winter period from November 1 to April 1 of each year. Nets or wire mesh over flare pits can be implemented if the flare tub is high enough to keep flame away from the net. Several photographs of a netted reserve pit are also included in this letter for your reference."

## **Current Investigation and Probable Cause**

The Affiant states that on May 6, 2011, while acting as a duly authorized law enforcement officer in the District of North Dakota, an investigation established probable cause to believe that the offense charged in the accompanying Information was committed and that the defendant committed the offenses, as described below:

1. Brigham Oil and Gas, L.P. has a recorded principal office located at Building 2 Suite 500, 6300 Bridge Point Parkway, Austin, TX 78730-5073 but operates in the State of North Dakota and is licensed by the North Dakota Secretary of State under identification number 21712600.

2. Brigham Oil and Gas, L.P. extracts mineral deposits from land within the exterior boundary of North Dakota to include oil and oil by-products.

3. The Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. § 703, states in pertinent part, "Unless and except as permitted by regulations made as hereinafter provided in this subchapter, it shall be unlawful at any time, by any means or in any manner, to . . .take, capture, kill, attempt to take, capture, or kill, possess . . ., any migratory bird . . .."

The MBTA, as a strict liability statute, was first affirmed in 1939, in United States v. Reese, 27 F. Supp. 833, 835 (D.C. Tenn. 1939). Since 1939, the federal courts held the misdemeanor provision of the MBTA, Section 707(a), is a strict liability offense. See United States v. Corrow, 119 F.3d 796, 805 (10th Cir. 1997) (quoting United States v. Manning, 787 F.2d 431, 435 n. 4 (8th Cir. 1986)); United States v. Engler, 806 F.2d 425, 431 (3d. Cir. 1986) ("Scienter is not an element of criminal liability under the Act's misdemeanor provisions"); Manning, 787 F.2d. at 435 n. 4 ("it is not necessary to prove that a defendant violated the Migratory Bird Treaty Act with specific intent or guilty knowledge."); United States v. Chandler, 753 F.2d 360, 363 (4th Cir. 1985) ("a hunter is strictly liable for shooting on or over a baited area"); United States v. Catlett, 747 F.2d 1102, 1105 (6th Cir. 1984) (holding that "scienter is not required for a conviction" under the MBTA).

In the Eighth Circuit, the MBTA is a strict liability offense. Manning, 787 F.2d at 435, n. 4.

The MBTA is not limited to activities engaged in by hunters and poachers. See United States v. Corbin Farm Serv., 444 F. Supp 510 (D.C. Cal. 1978); judgment affirmed on other grounds, 578 F.2d 259 (9th Cir. 1978) (MBTA applied to a defendant that accidently poisoned migratory ducks as a result of application of pesticide to an alfalfa field, the court rejected the contention that the MBTA was limited to a prohibition on hunting.)

Strict liability has been applied to corporations whose activities have caused migratory bird deaths by exposing birds to oil through the operation or maintenance of ail sumps or pits. See e.g. United States v. Stuarco Oil Co., 73-CR-129 (D. Colo. 1973) (company charged and pled nolo contendere to 17 counts under the MBTA for deaths of birds resulting from company's failure to build oil sump pits in a manner that could keep birds away); United States v. Union Tex. Petroleum, 73-CR-127 (D. Colo. 1973) (prosecution of oil company for maintenance of oil sump pit); United States v. Equity Corp., Cr. 75-51 (D. Utah 1975) (company charged with and plead guilty to 14 counts under the MBTA for deaths of 14 ducks caused by the company's oil sump pits); United States v. Union Pac. R.R., CR-1-90-8 (N.D. Tex. May 1, 1990)).

4. Title 50, Code of Federal Regulations, Part 10.13 provides a list of migratory birds which includes the mallard (Anas platyrhynchos) as a migratory bird.

5. It is the Affiant's knowledge the Service does not issue permits to oil companies to take migratory birds in concert with oil production activities which includes but is not limited to Brigham Oil and Gas, L.P.

6

6.   It is the Affiant's knowledge that on May 6, 2011, the Affiant and Service Contaminants Specialist Micah Reuber inspected an oil production facility which was further identified by a placard at the site as the Lippert 1-12H No.1-H (Lippert). According to the placard, Lippert was owned by Brigham Exploration Company which your Affiant recognizes as incorporated with Brigham Oil and Gas, L.P. Further, the Lippert site was located at Township 153 North, Range 102 West, Section 1, Williams County, North Dakota and has North Dakota Industrial Commission (NDIC) File Number 19034.

7.   It is the Affiant's knowledge based on information supplied from Kyle Joersz of the North Dakota Industrial Commission Oil and Gas Division that the Lippert 1-12H No.1-H site had a Spud date of June 20, 2010 (initial date of drilling). Further, drilling was completed on the Lippert 1-12H No.1-H site on November 14, 2010.

8.   It is the Affiant's knowledge that upon inspection of the open reserve pit (not netted or flagged), the Affiant noticed an oil sheen on the fluid of the reserve pit. Further, the Affiant observed two dead and oiled mallards which were collected. Based upon the Affiant's experience and education, the Affiant states that it reasonably appeared the two mallards died as a result of exposure to the contents of the oil reserve pit.

The foregoing statement is based upon:

[✓] My personal observation
[✓] My personal investigation
[ ] Information supplied to me from other law enforcement officer's observation and investigation
[✓] Other (explained above)

## DECLARATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. (28 U.S.C. § 1746)

Dated: August 19, 2011

_____ #525
Agent's Signature

Resident Agent in Charge
Agent's Title